IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 16, 2025

**STATE OF TENNESSEE v. JESSE L. KUTRIEB**

**Appeal from the Circuit Court for Cheatham County**
**Nos. 16605 & 16606          Suzanne Lockert-Mash, Judge**

_____

**No. M2024-01937-CCA-R3-CD**

_____

In 2012, the Defendant, Jesse L. Kutrieb, pleaded guilty to two counts of vandalism of property valued at $500 or less, three counts of burglary other than a habitation, theft of property valued at $500 or less, and two counts of theft of property valued between $1,000 and $10,000.  The trial court sentenced him to an effective sentence of four years of supervised probation.  The Defendant moved out of state without notifying his probation officer and was arrested and convicted of multiple offenses in Michigan.  On this basis, the trial court revoked his probation and ordered the Defendant to serve his sentence in confinement.  On appeal, the Defendant asserts that the trial court erred when it revoked his probation because it did not rely on the facts set forth in the probation violation warrant, which only included absconding.  After a thorough review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

Matthew T. Mitchell, District Public Defender, and Winston P. Vaughn, Assistant Public Defender, Ashland City, Tennessee, for the appellant, Jesse L. Kutrieb.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and J. Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Defendant's moving to Michigan without informing his probation officer, which the trial court found was absconding.  The Defendant's probationary sentence stems from his pleading guilty on April 13, 2012, to

two counts of vandalism of property valued at $500 or less, three counts of burglary other than a habitation, theft of property valued at $500 or less, and two counts of theft of property valued between $1,000 and $10,000. The trial court sentenced him to an effective sentence of four years of supervised probation.

On July 30, 2015, the Defendant's probation officer, Roderick Davison, Sr., filed a probation violation warrant in which he alleged that the Defendant violated two rules of probation. The warrant alleged that he violated Rule 5, which required that the Defendant notify his probation officer before changing his residence and get permission of the probation officer before leaving the county of residence or the state. Officer Davison said that on or about July 23, 2015, he conducted a home visit to the Defendant's address and was informed that the Defendant had moved out of the residence on or about June 15, 2015. The filing also alleged that the Defendant violated Rule 9, which required that he pay all required fees. It noted that the Defendant was behind $860 in supervision fees.

The Defendant was arrested in Michigan on May 24, 2024; counsel was appointed in this matter on November 12, 2024; and the trial court held a hearing on November 26, 2024.

Officer Davison testified that at the time of this violation warrant he had just started with the department. The Defendant last reported to his probation officer on June 14, 2015. Officer Davison conducted a home visit on July 23, 2015, and was informed that the Defendant had moved. Officer Davison attempted to call the Defendant's phone several times with no success, so he filed the probation violation report. Officer Davison said that, before the June 2015 reporting, the Defendant had successfully passed all of his drug screens.

During cross-examination, Officer Davison agreed that the Defendant had reported monthly for three years of his four years of probation. He had passed every drug screen and had no other violations. Officer Davison agreed that the Defendant's probation would have expired in 2016 and that he had no idea what happened, other than he was informed the Defendant had moved to Michigan.

The Defendant testified that he was in supervision from April 2012 to June 2015. His original probation officer was Darrell Smith, and he arranged his Michigan move with Mr. Smith. He said that he paid a transfer fee of $375, filled out paperwork, and Mr. Smith approved his move. The Defendant later learned that Mr. Smith had been arrested for sexual exploitation and that his transfer was never fully completed. The Defendant said that he reported to Officer Davison twice but never told him that he was moving to Michigan.

2

The Defendant said that he did not think it was unusual that no one from probation contacted him while he was in Michigan. He said that he was waiting for Mr. Smith to contact him and did not know who to contact at the probation office. The Defendant did contact Holly Waller to finish paying his court costs, fines, and restitution, and he paid that amount down to $3,150 before he lost his job. He came up with a new payment plan to begin May 2024, but he was arrested on May 24, 2024. When in custody in Michigan, he learned that he had a probation violation in Tennessee.

The Defendant asked the judge for another opportunity on probation. He noted that he had not failed any drug tests and complied with the rules of probation.

During cross-examination the Defendant said that he knew that probation required reporting, but that he was waiting on Mr. Smith before he reported in Michigan. He said that, after he left in 2015, he was incarcerated in Michigan in 2017 for marijuana possession and placed on probation. He said that he thought his Tennessee probation and his Michigan probation were one and the same.

The Defendant agreed he did not contact his new probation officer despite knowing that his original probation officer had gotten into trouble. He said he did not have his phone number. He agreed he could have called the probation and parole office, but he said he did not have money for a phone.

Upon questioning from the trial court, the Defendant agreed that he had reported to Officer Davison before he went to Michigan. He said he never told Officer Davison that he was leaving and that this was the last time he was reporting because he was moving to Michigan. The Defendant said he did not know that Officer Davison was looking for him.

The Defendant said that, after he moved to Michigan, his family contacted him to tell him that Officer Smith had been arrested. He did not know who to report to in Michigan, so he did not report. He agreed he called the clerk's office to pay his fines and restitution but never asked whether he should report or for a way to contact the probation office. He agreed that while he was in Michigan he violated his probation by being arrested for marijuana, but he never informed his probation officer of the violation. He said he did not know that the rules of probation, which he agreed he received, required that he communicate new arrests to his probation officer. The Defendant said that in 2022 he was incarcerated for two counts of felonious assault and two counts of "a gun charge." His 2024 arrest was for possession of methamphetamine.

The Defendant agreed that he was represented on all of these Michigan charges, but never informed them that he was on probation in Tennessee or asked them to communicate his multiple arrests to his probation officer. He said that he did not know that his attorneys

3

would be able to do that. The Defendant asked to be placed back on probation with an ankle monitor, saying that he was going to live in a "sober living" house.

Based upon this evidence, the trial court found that the Defendant violated his probation and ordered him to serve his sentence in incarceration. It stated:

[I]f someone comes in and has a legitimate reason for failing to report or something, I'll give them a second chance.

But the one thing I ask every probationer, or tell every probationer, you are to report to this probation department. There is no reason in the world for you not to keep in contact.

If you kept calling the probation department and you live 30 miles away from the probation department, and you called in and said, I don't have a car, I can't get there, can I call in? And they said, no, you get here. And you keep calling in, and again, I don't have anything, can I meet you or whatever? And you come in here and show me you didn't, I might, I might consider something like that.

But this is a situation that just because you make it three years without getting any problems, and then the last year you go just totally hog wild, violating everything you can violate, that doesn't excuse. Just because you've done – I don't say, we're going to put you on probation for four years, and if you can make it three-fourths of the way, I'm going to give you that last year to mess up, and then I'll put you back on.

That's not what we do. When you go on probation, you are telling this court, you're telling the [S]tate, I have messed up when I committed this criminal offense. If you give me one more chance, I'm going to be a respectable citizen. And that's basically what probation is.

Okay. And you have come in here and absolutely have made no sense at all. I believe you have lied to this Court when you've come in and said – there was a probation officer here, Darrell Smith, that was arrested. And if I recall correctly, it had something to do with inappropriate contact with female probationers. And I remember when he was arrested.

So you had to have known that before you left. Because that's why I kept asking you, why are you seeing Mr. [Davison] over here? If you were

4

dealing with Mr. Smith while you were there for three years, then all of the sudden you're seeing this man.

I have no contact with the probation department after I've moved to Michigan. I don't know how to get [a hold] of the probation department after I moved to Michigan.

Yet, you know that a probation officer was fired because of official misconduct and charged and arrested. That doesn't even make any sense.

What it tells me, based on the testimony, is that you were seeing him because Mr. Smith was already gone, and you decided to go to Michigan for whatever reasons. And you went up there without permission, or you had been talking to Mr. Smith about it and not got any permission, and just thought you would go.

But if I give you the benefit that you thought you did when you were up there, you should have known how to have gotten in touch with them. But yet you were up there, and when the [S]tate questioned you, the only thing that came out was the 2017 marijuana arrests.

You didn't volunteer that other stuff until I started . . . questioning you, because there's always more arrests when you're gone that long. And I always look back there and look and see when that warrant was served. Which told me you had to be in custody when it was served. So that told me you had more arrests.

So then after I questioned you even more, you told me about this other stuff. You weren't forthcoming with that.

So, no, Sir. You have violated your probation. You have violated it by absconding. Mr. Davison said that he came out, that you missed the reporting. He went to look for you. He went to your home.

They told him you no longer live there. He called you numerous times. There was no answer. Could not get [a hold] of you, and you absconded. You went out of state. You went up to Michigan. You picked up numerous other arrests, and there's nothing to indicate to me that you will do anything differently than what you were doing when you went up to Michigan.

5

These ankle monitors? I do not believe in them. . . . I believe that if you are a danger to society enough that you need an ankle monitor, then you don't need to be released. So ankle monitors do not, I believe, help anything on probation.

You haven't done anything that we've asked you. I'm going to violate your probation, and you can just do the remainder of your time.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it found that this case involved a non-technical violation of absconding. The Defendant contends that the warrant never explicitly states that he absconded but states that he failed to notify his probation officer of his change of address. The Defendant contends he did notify his probation officer and paid a transfer fee. He further asserts that the trial court improperly relied on facts not included in the probation violation warrant, namely his additional charges. The State counters first that the Defendant's convictions predate the statutory limitation on consequences for technical violations, eliminating due process concerns, and second that the Defendant missed ten monthly check-ins and failed to report his new address.

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Generally, discretion is abused when the trial court applies "incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id.* at 758 (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. "The first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id*. at 757. If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke probation under the first step. T.C.A. § 40-35-311(e)(1), (2); *Dagnan*, 641 S.W.3d at 757 n.4; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005).

6

In determining the appropriate consequence under the second step, a trial court may consider the nature and seriousness of the violation, the number of prior revocations, the defendant's criminal history, and amenability to continued probation. *Dagnan*, 641 S.W.3d at 759 n.5 ("consideration of past criminal history is only appropriate in the second part of the two-step analysis"). Factors relevant in demonstrating a defendant's amenability to continued probation include a defendant's acceptance of responsibility and expressions of genuine remorse, and the likelihood of complying with orders designed to further or accomplish a defendant's rehabilitation. *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (citing *State v. Poe*, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981)). "The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996)), *no perm. app. filed*.

"If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." T.C.A. § 40-35-311(d)(1). Under the current probation statute, there are two categories of probation violations, technical and non-technical, with differing penalties for each.

These two categories were created by the passage of the Public Safety Act of 2016 ("PSA"), and its subsequent amendments. Prior to the enactment of the PSA, trial courts "possess[ed] the power, at any time within the maximum time that was directed and ordered by the court for the suspension, after proceeding as provided in § 40-35-311, to revoke and annul the suspension." T.C.A. § 40-35-310(a). The procedure governing a trial court's revocation of a defendant's probation or suspended sentence at the time of the Defendant's conviction provided:

> (d) The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge.
> (e)(1) If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial court shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence, and:
> > (A) Cause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310; or

(B) Resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-311(d), (e)(1)(A)-(B).

The PSA became law on January 1, 2017, and added, as relevant here, Title 40, Chapter 28 which created a graduated system of sanctions for violating a sentence involving release into the community to be imposed under the authority of the Tennessee Department of Probation and Parole. *State v. Butler*, No. W2023-00566-CCA-R3-CD, 2023 WL 8234319, at *7 (citing 2016 Pub. Acts, c. 906); *see also State v. Rand* 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024). Thus, if the PSA applies to the Defendant's case, it would be necessary for us to determine whether his warrant sufficiently alleged that he absconded, a non-technical violation.

As a general rule, a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense. *Id.* (citing *State v. Tolle*, 591 S.W.3d 539, 545 (Tenn. 2019); *State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008) ("[T]he sentencing law in effect at the time of the offenses [is] the proper framework for establishing the defendant's sentences."); *State v. Mason*, No. E2018-01310-CCA-R3-CD, 2019 WL 3992473, at *4 (Tenn. Crim. App. Aug. 23, 2019) (concluding that the defendant had waived any claim regarding the absence of graduated sanctions at his revocation hearing and noting that the statute relied upon was inapplicable because the defendant's offenses were committed before the effective date of the statute)). This is because "[w]hen the trial court revokes a defendant's probation, any action it takes thereafter relates back to the sentence previously imposed." *Id.* (citing *Tolle*, 591 S.W.3d at 546). The Defendant committed the offenses in this case in 2011, therefore, we apply the law in effect prior to PSA.

Applying that law, articulated above, we conclude that the trial court did not abuse its discretion when it determined that the Defendant violated his probation and therefore, revoked his probation. The trial court did not find credible the Defendant's testimony that he informed his previous probation officer of his move. It further did not find credible his testimony that he was unsure how to contact the probation office and was waiting for a probation officer to contact him. The trial court found that the Defendant knew that he was required to report to Officer Davison but went to Michigan without permission. The trial court said that, even if it believed that the Defendant thought he had permission to go to Michigan, he still would have needed to report via phone to the probation office, which he did not do. The evidence supports the trial court's revocation of the Defendant's probation based upon his failure to report.

The trial court then made proper considerations in determining the punishment for the Defendant's violation. "The consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *Rand*, 696 S.W.3d at 106 (citing *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023)). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *Id.* (citing *Dagnan*, 641 S.W.3d at 759 n.5). Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. T.C.A. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*.

In this case, the trial court found that the Defendant had lied to the court. It found that the Defendant was not forthcoming about his additional arrests and convictions while in Michigan, which included violating a probationary sentence given to him in Michigan for charges stemming from a Michigan case. The trial court found that the Defendant had presented no proof that he would be any more successful on probation in Tennessee if he were returned to probation. The trial court did not abuse its discretion by considering the Defendant's criminal history when determining his punishment. It further properly considered his amenability to future rehabilitation, his previous history on probation, and his amenability to correction. The record supports the trial court's imposition of the Defendant's original sentence, and he is not entitled to relief on this issue.

## III. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

_s/ *ROBERT W. WEDEMEYER*__
ROBERT W. WEDEMEYER, JUDGE

9